28 C.C.P.A.(Patents)

## In re CARR.
### Patent Appeal No. 4464.

Court of Customs and Patent Appeals.
June 9, 1941.

John L. Wiegreffe of Akron, Ohio, and Ralph L. Stevens, of Washington, D. C. (Ralph L. Stevens, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming with respect to claims 3, 5, 6 and 8, a decision of the Primary Examiner rejecting said claims, in view of the prior art, of an application for a patent for a new and useful improve-

ment in heat exchange apparatus. Three claims were allowed.

Claims 3, 5 and 6 are illustrative and read as follows:

"3. A heat exchange apparatus comprising an outer upright casing, a much shorter inner upright casing concentric with said outer casing, the lower ends of said casings being united to form an annular catch basin, liquid distributing means at the upper end of said outer casing for distributing liquid in comminuted form for gravitation downwardly, a propeller type fan mounted coaxially within said inner casing to impel air upwardly into counter flow contact with the gravitating liquid and means above said fan for permitting the upward flow of air and for diverting said gravitating liquid into said basin."

"5. A heat exchange apparatus comprising an upright casing having openings at either end to permit high volume flow, fluid delivering and distributing means located substantially at the upper end of said casing and adapted to distribute fluid to be cooled in comminuted form for gravitation downwardly, and means located adjacent the lower end of said casing to cause air to be delivered vertically through the lower end opening into said casing and to travel therethrough in spiral paths, whereby the length of travel of the air in contact with the comminuted fluid is greater than the vertical distance between said last named means and said upper end and whereby the relative speed between the falling fluid and the air is also increased."

"6. Heat exchange apparatus comprising an upright casing, liquid distributing means adjacent the upper end of said casing for distributing liquid in comminuted form for gravitation downwardly, a propeller fan mounted coaxially within the bottom of said casing and designed to propel a draft of a gaseous medium vertically upwardly through said casing in spiral paths whereby the effective heat transfer relation between the gaseous medium and the liquid is increased without increasing the actual length of said casing, a device spaced below said fan for collecting the comminuted liquid, and means for directing a gaseous medium in a laterally downward direction into the space between said device and said fan."

The references cited are: Anderson, 1,051,661, January 28, 1913; Ruehl, 1,927,073, September 19, 1933; Fisher, 2,016,086, October 1, 1935.

The Board of Appeals succinctly described the invention as follows: "The claims relate to apparatus for passing a shower of liquid such as water and air in countercurrent relation. The water is showered downwardly through a casing-like structure, the air is impelled upwardly in a helical path. The evaporation of the liquid serves to cool the same and it is then collected at the bottom of a casing. It may be observed that within the scope of most of the claims it is immaterial whether the object be to cool the liquid or the air or both although it is indicated that the device usually would be employed for the purpose of cooling the liquid."

The patent to Anderson relates to an apparatus for cooling and purifying the air of buildings. It discloses a propeller fan set coaxially in the lower portion of the apparatus with a cylindrical shell which incloses a plurality of cone-shaped screens arranged in concentric formation one over the other and spaced apart, with their apices extending upwardly and their bases encircling the fan. The screens may be constructed of wire gauze, textile or other porous material. Water is constantly supplied from a tank above the screens to the upper ends of the screens and distributed in a film over the surface thereof. The air impelled by the fan penetrates through the film and is thus cooled. Surrounding the bases of the cones is an annular basin to receive the water as it finally descends from the cone surfaces. This water is pumped back to the tank again and is run on the screens.

The Ruehl patent relates to an air washing apparatus. It discloses a cylindrical shell with blowers at the top thereof which force air out of the apparatus. The action of the blowers also sucks air from the outside atmosphere. The air thus brought in is forced through an annular flue surrounding the shell in the lower portion of which are perpendicular louvers or small openings. Through these small openings the air enters tangentially and is circulated upwardly in a rotary or spiral motion about the longitudinal axis of the chamber. In its upward progress the air intimately impacts sprays of water which are tangentially emitted from several nozzles spaced on horizontal pipes leading from a vertical feed pipe extending through the greater part of the shell and which enters the shell near the bottom thereof. The water drops downwardly and, after having extracted foreign matter from the air, is

screened of its impurities and recirculated. The air thus cleaned is sent out by the said blowers through the top of the apparatus.

The Fisher patent relates to an apparatus for cooling liquids. It discloses a vertical tank having a tangential air inlet, a cone provided with a spiral vane in the lower portion of said tank and coaxial therewith, and opposite the air inlet. In operation the cooling air forced inwardly through the inlet swirls around the conical member and passes upwardly through the tank in circular movement. In its upward progress the air is brought into intimate contact with sprayed water. In evaporating part of the water the temperature of the water is lowered and thus cooled.

The examiner held that it is not apparent what structural limitations in claims 5 and 8 distinguish them even colorably from the Ruehl reference.

With respect to claim 3, the examiner held that there did not appear to be any patentable difference in placing the fan at the bottom of the apparatus, as it appears in the claim and also in the Anderson patent, or at the top as is shown by the blowers in the Ruehl patent. The examiner stated: "That is largely a matter of choice. So long as air is caused to flow in a stream through the tower, the position of the propelling means is broadly not material."

The examiner held that it would not require inventive skill to substitute the propeller or fan of the Anderson patent for the blowers in the Ruehl patent. This of course would mean the placing of the Anderson fan near the bottom of the Ruehl structure. He therefore held claim 3 anticipated by Ruehl taken in view of Anderson.

The examiner rejected claim 6 in the following language:

"With respect to claim 6, this also is met merely by substituting a fan of the Anderson type at a low point in the inner casing of Ruehl, the outer casing directing the air downwardly and laterally into the inner casing.

"It is believed that the claims are too broadly worded to define anything patentable over the references, and that the invention lies in the more specific arrangement and form of fan and whirl producing mechanism. Clearly, it is well known to spiral air upwardly through downfalling liquid. All three references mentioned above show this. It is also old to position the fan coaxially and at the bottom of a cylindrical casing, where air or water is being treated. The claims involve little more than the broad combination of these two concepts."

While the Board of Appeals generally affirmed the decision of the examiner with respect to the claims here involved, it rejected claim 3 upon the Anderson reference alone.

It may be true that air coolers and air washers may differ from water coolers, as appellant contends, but it is also true that when atmospheric air is blown into contact with a spray of water the water is cooled by reason of some evaporation and the air is also cooled by being washed and humidified. Therefore we are not impressed with the argument of appellant that the difference between the effect of the operation of his apparatus and that of the reference patents is important. The mere designation of the machine of appellant as a "heat exchange" apparatus makes it differ in no material respect from air cooling or air washing machines.

A comparison of claim 3 with the disclosure of the Anderson patent as described herein clearly shows that the claim contains nothing that differentiates it in any respect from the structure of the patent. Appellant has contended that the limitations in said claim, "means at the upper end of said outer casing for distributing liquid in comminuted form for gravitation downwardly" and "means above said fan for permitting the upward flow of air and for diverting said gravitating liquid into said basin," make the claim patentably different from the patent. The patent shows a controlled distributor for spreading the water in such manner as to dampen the screens. The water must necessarily be in relatively tiny drops as it leaves the distributor, otherwise the action of the water would be to do more than dampen the screens. The liquid flows downward by gravitation in the patent just as it does in the application. As far as the said second limitation in count 3 is concerned, the top of the cylindrical shell in the patent is open. The opening surely is a means to permit the upward flow of air and it is above the fan. There is also shown in the patent an annular basin to receive the gravitating water which is diverted thereto by the surfaces of the cones. Therefore in our opinion claim 3 does not differ patentably from the disclosure of the Anderson patent.

It appears to us that claim 5 reads directly upon the Ruehl patent. The contention that the Ruehl casing is not open at both ends, as shown in the structure of appellant, does not, in our opinion, merit much discussion. It is true that the shell or tank in the Ruehl patent acts as its own base. It is also true that the tank of appellant must rest on something that in effect would be a substitute for the bottom of the Ruehl structure. It so appears in the application drawings. The Ruehl structure has a number of openings close to the bottom through which the air is vertically drawn. The air then travels through the casing in a spiral path, and there is an opening at the top through which the air is blown. Furthermore, the claim might well be interpreted to mean, as was suggested by the board, that the apparatus of appellant could be closed at one end and have several openings in the other. The wording is "an upright casing having openings at either end." We think that the board properly held the claim to be anticipated by the Ruehl disclosure and we quote with approval the following language of the decision:

" * * * This claim reads upon Ruehl's casing, broadly the inner casing having the openings 13 in the bottom and the opening through the fan at the top. Ruehl shows means located adjacent the lower end to cause air to travel in a helical path and otherwise satisfy the claim."

Both of the tribunals below were of opinion that claim 8, like claim 5, is relatively broad and presents nothing patentable over the Ruehl patent. We are in agreement with the decisions below in this respect. Appellant contends that this claim is patentable over the reference "because it definitively specifies the relative locations and sizes of the parts and emphasizes the important functions accruing therefrom." Since the claims are for structure only, if the elements of the structure defined in the claims do not involve invention over structures of the prior art, the functions attributed to the parts of the structure of the application are immaterial. In claim 8 the apparatus is called "a liquid cooling" apparatus instead of a "heat exchange" apparatus. That change in designation makes no difference in the nature of the structure claimed, as we have hereinbefore pointed out. The claim calls for a "free emergence of a large volume" of the gaseous medium passing upwardly through the upper outlet under forced draft. The Ruehl patent shows that the air is blown in large volume through the upper outlet. This, of course, meets the last quoted limitation of the claim. The claim calls for "a spray of particles that uniformly fill and pass through substantially the entire cross sectional area of the upper end of the tower." The spray in the Ruehl patent does likewise. The tower or casing of Ruehl permits "a downward fall" of the particles of water to its bottom as is called for in the claim. The louvers or openings shown in the patent are the means at the bottom of the casing or tower through which the air current passes and is directed upwardly through "the whole interior" of the casing. The ascending air in the patent goes upwardly in a "spiral" or "swirling" movement and is commingled "thoroughly" with the particles of water from the spray, and naturally the curved path of the ascending air has a "path of travel" longer than the "verticle length" of the casing. Thus it may be seen that there is nothing in claim 8 which renders it materially different from claim 5.

The board agreed with the examiner that claim 6 could be met by substituting for the Ruehl blowers the fan of Anderson near the bottom of the Ruehl structure. It is clear that if this were done the air current would be forced upwardly through the casing of Ruehl and would be drawn from the outside in the same fashion as disclosed by Ruehl. The air thus driven upwardly by the substituted Anderson fan placed as aforesaid would not rise in a spiral path, but the spiraling of an air current is old in the art and it would not require the exercise of invention to so alter the structure of Ruehl to accomplish this result.

The decision of the Board of Appeals is affirmed.

Affirmed.