32 C.C.P.A. (Patents)

## In re STATTMANN.

### Patent Appeal No. 4943.

Court of Customs and Patent Appeals.

Dec. 11, 1944.

Rudolph W. Lotz, of Chicago, Ill., and Joseph H. Milans, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Judges.

JACKSON, Associate Judge.

In this proceeding application was made by appellant in the United States Patent Office for a patent alleging "certain new and useful improvements in a Receptacle And Closure Cap Therefor." All of the claims, 11 and 15, were rejected by the examiner for lack of patentability over the cited prior art. The Board of Appeals affirmed the examiner's decision and appellant appealed to this Court.

Claim 11 is illustrative of the subject matter and reads as follows:

"11. In combination, a receptacle equipped with a neck having upper and lower substantially equi-angular oppositely tapered substantially frusto-conical surfaces meeting in an annular ridge, a resilient sheet-metal cap equipped with a gasket in its crown portion opposed to the rim of the receptacle mouth and with an annular resilient continuous unsplit flange tapered along its upper portion adapted to extend substantially concentric with and spaced from the upper surface of said neck, the lower end portion of said flange projecting inwardly and being of appreciably less depth than the lower surface of said neck and equipped with an inturned upwardly projecting unsplit annular lip engageable with said lower surface along an annular line immediately below said annular ridge and spaced from the lower end of said lower tapered surface, the diameter of the said ridge being appreciably greater than the inner diameter of said inturned lip, the taper of said upper surface and the inner diameter of said inturned flange being such that when a point in said lip is engaged with said lower tapered surface immediately below said ridge a diametrically opposed portion of said lip will engage said upper tapered surface closely proximate to its upper edge for loosely initially support-ing said cap upon the receptacle at an angle substantially perpendicular to the angle of taper of said upper surface and in closing relation to the receptacle, said cap being adapted to be forcibly swung about said last-named point of engagement of said lip with said lower tapered surface as a fulcrum to thereby effect progressive expansion of the cap flange and lip as the cap is swung to receptable sealing position wherein said lip becomes engaged annularly with a portion of said lower surface of larger than the normal inner diameter of said lip, the taper of said lower surface and the spacing of said lip from said gasket being such that said lip will exert a continuous downward pull on the cap to exert continuous compression stress on said gasket."

The references relied upon are: Flanigan, 521,788, June 26, 1894; Carvalho et al., 1,413,256, April 18, 1922; Berge, 1,673,485, June 12, 1928; Carvalho, 1,703,573, February 26, 1929; Podel, 1,858,864, May 17, 1932; Colombani, 1,961,872, June 5, 1934.

The alleged invention relates to a combination of a receptacle and closure cap therefor, so shaped and associated with each other that the cap may be readily mounted on the receptacle and removed without injury or the use of tools, and whereby the receptacle may be hermetically sealed. The receptacle is disclosed as being constructed so that near its mouth or upper edge a ridge is formed by two oppositely tapering frusto-conical surfaces. A gasket is provided for the closure cap engaging the upper edge of the receptacle. The cap includes a flange with two frusto-conical portions generally parallel, when the cap is in place, to the frusto-conical surfaces of the receptacle. The outer edge of the flange is turned inwardly to form what would generally be called a bead. To close the receptacle the cap is tilted so that one portion of the bead is engaged below the ridge, and using such point of engagement as a fulcrum the cap is snapped into its closed position, in which the entire bead is below the ridge.

The tribunals below rejected the claims as defining nothing patentable over the Podel reference in view of any one of the patents to Flanigan, Carvalho et al., Carvalho, and Berge. The Primary Examiner considered the manner of applying the cap recited in the claim to be functional, but stated that the patent to Colombani dis-

closed it was known in the prior art to adapt snap-on caps to bottle-neck beads by first hooking the cap flange on one side under the bead and pressing the rest of the flange over the bead into place. The board confined its discussion to the Podel, Flanigan, and Carvalho et al. patents, and generally affirmed the decision of the examiner.

The patent to Podel discloses a receptacle, toward the rim of which is an annular ridge formed by two frusto-conical surfaces, and a cap having a flange with complementary frusto-conical surfaces. The edge of the flange is turned outwardly to form a bead, which slips over the ridge when the cap is applied. The bead of the cap is pressed inwardly at a plurality of points and does not embrace the receptacle throughout its circumference.

The patents to Flanigan and Carvalho et al. relate to receptacle closures and disclose caps with flanges turned inwardly to form a bead which is slipped over a ridge at the mouth of the receptacle so that the inwardly turned flange becomes engaged beneath the ridge.

Each of the patents to Berge and Carvalho discloses a cap for receptacles the flange of which is inturned at its margin.

The patent to Colombani discloses a method of capping a receptacle similar to the method described by appellant.

Comparing the structure of appellant with that of the Podel patent it is clear that both devices are the same except for several minor differences. As to one difference, in the former the sealing gasket is on the upper edge of the receptacle while in the latter the gasket is on the top inclined surface just below the upper edge. The position of the gasket in appellant's structure is old in the art as disclosed by the Flanigan, Carvalho and Carvalho et al. patents, and the specification of the Podel patent points out why the patentee preferred to apply his gasket on the side instead of the edge of the container. It appears to us to be immaterial whether the gasket be placed on the rim of the receptacle or shortly below it, since the sealing action is effected by reason of the pressure of the cap against the gasket.

A second difference which seems to be principally relied upon by appellant is that the flange in appellant's cap is turned inwardly while the cap of the Podel patent is turned outwardly. Inturned flanges are old in the art as disclosed by Flanigan, Carvalho et al., Carvalho, and Berge. It is contended by appellant that if an inturned flange were applied to the Podel receptacle it would tend to destroy the sealing action of the gasket by forcing the flange of the cap outwardly. There is nothing in the record to substantiate this contention and we are unable to see that it would make any difference whether the flange is turned inwardly or outwardly since it grips the lower inclined surface of the receptacle and therefore must tend to spread the flange. Since the flange, whether inwardly or outwardly turned, is resiliently urged inwardly and bears against the lower surface of the ridge, it surely pulls the cap down, holding the gasket in sealing position.

The only other structural difference between the combination of appellant and that of the Podel patent is that in the former there is a continuous engagement between the flange of the cap and the receptacle, while in the latter the flange is so formed as to make intermittent engagement. Continuous engagement is conventional as shown by the patents to Flanigan, Carvalho and Carvalho et al., and clearly appellant discloses no new or unexpected result from this feature of his application. Whether the engagement of the flange be continuous or intermittent, it serves only to compress the gasket and hold the cap in place.

We agree with the examiner that the statement in the claims as to the method of applying the caps is entirely functional and, since the claims are not drawn to method but to structure, in order to be patentable they must distinguish from the prior art by structural limitations. This principle is so elementary that it is not necessary to cite authorities. Even, however, if the functional statements could be considered, the method shown by appellant of affixing the cap to the receptacle is old, being clearly shown in the device of Colombani.

Claim 15 recites the angle of the tapered neck portion of the receptacle as being between 14 and 21 degrees. The record, however, does not show such inclination to be critical, particularly in view of the fact that the application suggests angles of from 10 degrees to 22 or more. Therefore patentability cannot be claimed on the specific range disclosed in claim 15.

It is clear to us that the combination disclosed in the application contains no feature which is new by itself or which co-acts in any new and unexpected way with other features. Appellant has merely substituted old constructions for fully equivalent constructions found in Podel, and the result of appellant's combination does not differ inventively from that shown by the Podel patent.

The decision of the Board of Appeals is affirmed.

Affirmed.