33 C.C.P.A.(Patents)

## Application of DRISSNER et al.
### Patent Appeal No. 5198.

Court of Customs and Patent Appeals.

June 11, 1946.

C. A. Weed, of New York City, for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 20, 44, 45, 73, 84, 85, 86, 87, and 90 to 102, inclusive, in appellants' application for a patent for an invention relating to improvements in "single spindle automatic screw machines."

Twenty-seven claims have been allowed by the Primary Examiner.

Claims 20, 44, 73, 84, 90, 91, 92, 94, 95, and 96 are illustrative of the appealed claims. They read:

"20. In a metal working machine having a rotary spindle and cooperating tool mechanism, a series of cross slides encircling said spindle, means for feeding bar stock through the spindle and including finger holding mechanism having a double toggle provided with a roller at the junction of the toggle levers, and a pair of relatively shiftable socketed members for receiving the opposite ends of said levers, the diameter of the roller being such that the distance between the opposing faces of said shiftable socketed members when shifted toward each other is but slightly greater than the diameter of the roller."

"44. An automatic single spindle screw machine comprising a single rotary work spindle, mechanism for rotating it, feeding and chucking mechanisms for said spindle, a series of side and top tool cross slides encircling the rotary spindle, mechanism for operating said cross slides, an indexible tool turret having reciprocating independently operated tool slides, mechanism for reciprocating said slides, and mechanism for indexing the tool turret, all of said operating mechanisms being completely housed by a pair of assembled housings in rear of the cross slides and by a housing spaced from the cross slides and between which last housing and cross slides the indexible tool turrett is located."

"73. The machine of Claim 66 in which the tool turret indexing means is operatively controlled by the locking means and gradually stopped thereby."

"84. In an automatic single spindle machine, the combination of a single rotary work spindle, means for rotating it, an indexible tool turret having reciprocating independently operated tool slides, means for reciprocating said slides, means located beyond the outer end of the tool turret for indexing the tool turret, a series of side and top tool slides encircling the rotary spindle, and means for operating said slides, the operating means for the tool turret being located in a housing positioned at the outer end of the tool turret."

"90. The machine of Claim 66 in which the locking means gradually stops the indexing means."

"91. In an automatic single spindle machine, the combination of a single rotary spindle, means for operating the spindle, a cam shaft, a clutch for controlling the speed of said spindle, fluid operative means for controlling the operation of said clutch, and cam shaft controlled valve mechanism for controlling the operation of said fluid means and thereby the operation of said clutch."

"92. In an automatic single spindle machine, the combination of a single rotary spindle, means for rotating the spindle, a cam shaft, work holding means carried by the spindle, fluid operative means for controlling the operation of said work holding means, and cam shaft controlled valve mechanism for controlling the operation of said fluid means and thereby the operation of said work holding means."

"94. In an automatic single spindle machine, the combination of a single rotary spindle, means for rotating the spindle, a cam shaft, an indexible tool turret, fluid operative means for indexing the turret, and cam shaft controlled valve mechanism for controlling the operation of said fluid means and thereby the indexing of the turret."

"95. In an automatic single spindle machine, the combination of a single rotary spindle, means for rotating the spindle, a cam shaft, an indexible tool turret having reciprocating independently operated tool slides, fluid operative means for operating the tool slides, and cam shaft controlled valve mechanism for controlling the operation of said fluid means and thereby the operation of the slides "

"96. In an automatic single spindle machine, the combination of a single rotary spindle, means for rotating the spindle, a cam shaft, an indexible tool turret, means for locking said turret, fluid operative means for controlling the operation of said locking means, and cam shaft controlled valve mechanism for controlling the operation of said fluid means and thereby the operation of said locking means."

The references are:

Gerry, 332,889, Dec. 22, 1885;
Gridley, 725,438, Apr. 14, 1903;
Drissner, 1,567,790, Dec. 29, 1925;
Drissner, 1,604,116, Oct. 26, 1926;
Blood et al., 1,924,594, Aug. 29, 1933;
Whipp et al., 2,027,568, Jan. 14, 1936;
Spring, 2,053,748, Sept. 8, 1936;
Simpson, 2,103,342, Dec. 28, 1937;
Curtis, 2,118,021, May 17, 1938;
Potter et al., 2,118,024, May 17, 1938.

Appellants' device is a machine for performing various operations, such as boring or cutting on metal bar stock. The machine comprises a hollow rotatable spindle through which the bar stock passes longitudinally. Adjacent one end of the spindle, top and cross slides are mounted which are adapted to move various tools toward and from the stock. Those tools, which approach the bar stock from the side, perform the desired operations on the stock. A turret is provided beyond the end of the spindle for performing operations on the end of the stock. The turret carries four sets of guides along which tools may be moved toward or from the end of the stock as it is held by the spindle. The turret may be rotated to bring any one of the sets of guides into position so that the tool carried thereby may act on the stock.

The stock, in appellants' device, is held in the spindle by a collet or socket which has a bevelled outer surface engaging a correspondingly bevelled surface on an outer sleeve member which surrounds the collet. The collet is attached to a tube, and longitudinal movement of the tube produces a relative movement between the bevelled surfaces of the collet and outer sleeve member, thus causing the collet to contract and grip the stock. The longitudinal movement is effected by a toggle comprising levers, the outer ends of which are received in sockets while their inner ends are connected to a roller, the arrangement being such that the diameter of the roller is almost as great as the space between the sockets when the arms of the toggle are shifted toward each other.

The turret, which supports the tools adapted to engage the end of the stock, may be indexed (i.e., rotated to bring a desired tool opposite the stock) by means of a hydraulic mechanism which is mounted at one end of the machine.

The spindle is driven by a motor through a train of gears including two gears which are mounted on a common shaft and which are alternatively connected to and disconnected from the shaft by means of a clutch. The arrangement is such that the spindle will be driven at one speed when one of the gears is clutched to the shaft and at another speed when the other gear is clutched to it. The clutch is shifted by means of a hydraulically actuated piston and the movement of the piston is controlled by a valve actuated by a cam shaft.

Claim 20 is directed to appellants' toggle arrangement in which one end of each of two toggle arms is joined to a roller and the other ends of the arms are mounted in sockets, the roller being only slightly smaller than the space between the members in which the sockets are formed when the toggle is in closed position.

The Primary Examiner rejected claim 20 on the disclosure in the patent to Gerry and the disclosure in the Drissner patent No. 1,567,790, stating that the Drissner patent was cited as disclosing the cross slides encircling the spindle, as called for in that claim.

■ The patentee Gerry discloses a structure in which two toggle arms are pivoted together at one end, but the pivot pin is not a roller and is much smaller than the space between the members to which the opposite ends of the toggle arms are joined, whereas in appellants' structure, as hereinbefore noted, the roller to which the toggle arms are pivoted is almost as large as the space between the members. Furthermore, in the patentee's structure, neither of the toggle arms has its outer end in

a socket. Although the function of Gerry's toggle is generally similar to that of appellants', the patentee neither discloses nor suggests the particular arrangement of the toggle and associated elements called for by appealed claim 20. Accordingly, we are of opinion that the structure defined by claim 20 is patentable over the references of record.

Claims 44 and 45 were rejected on the Drissner patent No. 1,567,790, which discloses a single spindle machine having the same general arrangement of the spindle, gears, cross slides, and tool turret with guides for holding tools to act longitudinally on the stock, as called for by those claims, in view of the disclosures in the patents to Whipp et al., Spring, Simpson, and Potter et al.

Claims 44 and 45 are distinguishable from the Drissner patent only in that they call for housings for various parts of the machine.

■ The idea of providing housings for mechanisms of various kinds is conventional, as disclosed in each of the patents to Whipp et al., Spring, Simpson, and Potter et al. We are of opinion, therefore, that claims 44 and 45 do not define patentable subject matter.

Claims 73 and 90 have been rejected on allowed claim 66 on which they depend.

Claim 66 defines an apparatus.

Claims 73 and 90 define no structure in addition to that of claim 66, but merely state that the apparatus operates in a particular way.

■ Apparatus claims must, in order to be patentable, distinguish over the prior art in terms of structure. They cannot be held to be patentable merely on the basis of functional limitations. In re Carr, 120 F.2d 386, 28 C.C.P.A., Patents, 1240; In re Schmidt et al., 132 F.2d 869, 30 C.C.P.A., Patents, 785; In re Stattmann, 146 F.2d 290, 32 C.C.P.A., Patents, 813. It is clear, therefore, that claims 73 and 90 are not materially different from claim 66, but depend upon exactly the same structure as that claim for patentability. Had claim 73 included the statement that the tool turret indexing means in operatively *connected*

to, and controlled by, the locking means, a different situation would have been presented. We are of opinion, however, that claims 73 and 90, as drawn, do not involve patentable subject matter.

Claims 84, 85, 86, and 87, which call for housings for various parts of appellants' machine, were rejected on the Drissner patent No. 1,567,790.

As hereinbefore stated in connection with claims 44 and 45, housings for various parts of a machine do not involve patentable subject matter.

■ In addition to the housings, claims 84, 85, 86, and 87 distinguish from the disclosure in the patent to Drissner in stating that the indexing means for the tool turret is located beyond the outer end of the turret. We have carefully considered the arguments of counsel for appellants *with regard to that feature,* but are unable to hold that the tribunals of the Patent Office erred in concluding that the location of the indexing means, as defined in those claims, does not involve invention.

Claim 91 was rejected by the tribunals of the Patent Office on the disclosure in the patent to Curtis, in view of the disclosure in the Drissner patent No. 1,604,-116.

The patentee Curtis discloses a single spindle machine having change-speed gearing, including a hydraulically operated clutch. The operation of the patentee's clutch is controlled by a valve which is actuated by a solenoid.

It is argued by counsel for appellants that the Curtis device is not a "single spindle machine as commonly understood for the spindle * * * does not carry stock rods nor are such rods fed therethrough."

We are unable to agree with that contention of counsel. The spindle in the Curtis device is described by the patentee as "a vertical spindle," and holds the work to be operated on. It is, therefore, in our opinion, a spindle within the meaning of that term as used in claim 91, which merely calls for a rotary spindle and does not state that the work passes therethrough. Claim 91 distinguishes from Curtis only in that it calls for a cam shaft, and states that

the valve which controls the clutch is "cam shaft controlled." The claim does not specify the location or operating connections of the cam shaft, nor does it state that the cam shaft actuates the valve directly rather than through a solenoid or other intermediate means.

The actuation of various machine parts by cams is conventional, and the Drissner patent No. 1,604,116 discloses that it is old to control the valves of a metal working machine by means of a cam shaft. In view of the disclosures in the patents to Curtis and Drissner (No. 1,604,116) we are of opinion that claim 91 does not define patentable subject matter.

Claims 92 and 93 are directed to fluid operated means for controlling the feeding and holding of the stock.

Those claims were rejected on the disclosure in the Drissner patent No. 1,567,-790, in view of the disclosure in Drissner's patent No. 1,604,116, and are readable on the disclosure in the latter patent, except that they call for a single spindle machine, whereas the patent discloses a machine having five spindles. However, the patentee expressly states that his machine may be a "single spindle or multiple spindle screw" machine.

Claims 92 and 93 call for no structure which is peculiar to a single spindle machine. Under the related circumstances, we hold that those claims do not define patentable subject matter.

Claim 94 is drawn to fluid operated means, controlled by a cam shaft, for indexing the tool turret, and was rejected on the disclosure in the patent to Curtis.

In the Curtis machine, the motor is driven electrically, rather than by fluid pressure, and is controlled by projections or dogs, rather than by cams. However, there is nothing new either in fluid pressure operation of motors, which is disclosed in the patent to Blood et al., or in cam shaft control. Accordingly, those features broadly called for in claim 94 do not define patentable subject matter.

Claim 95 is directed to the fluid pressure operating means of the "tool slides" of the turret, and to the cam shaft control of the operating means.

That claim was rejected on the disclosure in the patent to Curtis and is fully met by that patent, except that in the Curtis machine the fluid pressure devices which actuate the tool slides are not controlled by a cam shaft. As hereinbefore indicated, the broad reference to cam shaft control is not considered sufficient to render the claim patentable which is otherwise fully anticipated by the patent to Curtis.

Claims 96 to 102, inclusive, were rejected on the patent to Drissner (No. 1,567,790), which discloses the arrangement of single spindle, top and cross slides, and cam shaft control, as called for by those claims, in view of the disclosures in the patents to Blood et al. and Curtis.

The only difference between the structures called for by claims 96 to 102, inclusive, and the disclosure in the Drissner patent is that the claims call for fluid operation of various parts of appellants'' machine and control thereof from the cam shaft by means of valves, whereas in the patent those parts are mechanically operated and mechanically controlled from the cam shaft.

The Primary Examiner held that the mechanical means of the Drissner patent are fully equivalent to the fluid pressure means as broadly called for in those claims, and that fluid operation of parts corresponding to those recited in those claims was old, as disclosed in the patents to Blood et al. and Curtis. That holding, with which we are in accord, was approved by the Board of Appeals.

It is stated in the brief of counsel for appellants that claim 98 calls for fluid operated means for controlling the speed of operation of the top and cross slides, rather than for controlling their operation, and that, therefore, that claim is patentable over the references of record.

We are unable to agree that control of the speed of operation of the slides, as broadly recited in claim 98, presents a patentable distinction over the control of

the operation of the slides as disclosed by the patents' to Drissner (No. 1,567,790), Blood et al., and Curtis, upon which the claim was rejected.

For the reasons stated, the decision of the Board of Appeals is modified, being affirmed as to claims 44, 45, 73, 84, 85, 86, 87, and 90 to 102, inclusive, and reversed as to claim 20.

Modified.

GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.