37 C.C.P.A. (Patents)

**Application of LIPPOLD.**

**Patent Appeals No. 5611.**

Court of Customs and Patent Appeals.
June 28, 1949.

Rehearing Denied Oct. 4, 1949.

Norman E. H. Deletzke, Chicago, Ill., for appellant.

W. W. Cochran, Washington, D. C. (E. L. Reynolds, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Primary Examiner, finally rejecting claims 1, 2, 3, 6, 7, 8, 9, and 12 to 18, inclusive, of an application for a patent, serial No. 441,637, filed November 11, 1947, "For Receptacle Filling Device." Two claims were allowed.

Claims 1 and 9 are illustrative of the involved subject matter and read as follows:

"1. A valve for filling containers with fluid from an apertured reservoir comprising, in combination, a valve plug, an open-ended freely flexible resilient body having a passage therethrough and having at one end means for communicating with the aperture in said reservoir and having at the other end valve sleeve engaging means, and a rigid valve sleeve intermediate said valve plug and said resilient body, said resilient body constituting the sole means for conducting fluid withdraw from an aperture in said reservoir to said valve sleeve."

"9. In a device of the class described, bulb compression means, an apertured bulb having rounded edges defining the aperture openings in the upper and lower walls of said bulb to permit a radial rolling contact between said rounded edges and the contacted portion of said bulb compression means, and condensate collecting and deflecting means formed integrally with said bulb and adapted, upon the compression of said bulb, to be deformed into condensate discharging position to discharge accumulated condensate therefrom."

The cited prior art is as follows: Beyer, 668,303, February 19, 1901; Luckie, 1,961,563, June 5, 1934; Mandell, 2,096,499, October 19, 1937; Stewart, 2,127,892, August 23, 1938; Howard 2,172,102, September 5, 1939.

It is said in the examiner's statement that the application discloses several species of the invention. When election was required by the examiner, appellant chose the species shown in two figures of his application, and the allowed claims, according to the examiner, are the only ones reading on the elected species. Therefore, the examiner's description of appellant's device was confined mainly to those two figures.

Appellant's invention, as disclosed in those two figures, relates to devices designed for filling receptacles, such as bottles with milk or the like. The pertinent drawings disclose a reservoir for containing the liquid which is to pass into the receptacles. The bottom of the reservoir has a number of openings, each designed to receive valve through which the fluid flows in a regulated manner. The bottom of the reservoir at each opening is turned downwardly by a flange upon which the valve structure rests. Centrally through the valve is a vent tube, to the bottom of which is affixed a valve plug with a constricted opening, the apertures of the tube and plug being in communication with each other. The vent tube is centrally supported by a spider with four arms. The lower portions of the spider arms are so constructed as to extend into and engage the flange, and on each of the spider arms is a foot portion which rests upon the interior surface of the bottom of the tank. The hub of the spider is swivelled on a collar which surrounds a portion of the vent tube, prevented from downward movement by a movable clip means mounted in an annular groove of the collar and on top of and abutting the top end of the hub. The valve plug has an upper and lower frusto-conical face, the former of which is a valve face, engaging a valve seat which is the lower terminus of a cylindrical sleeve element. Between the bottom of the tank and the sleeve element is a resilient bulb designed to urge and bias the lower end of the sleeve against the valve plug, and also to establish a passage for controlled fluid flow from the opening of the tank, between the flange and opening of the sleeve. In the upper end of the valve sleeve are four guide arms affixed thereto at their lower extremities. Those guide arms extend upwardly through the flange opening of the tank, outside the hub and between the spider arms. The guide arms are so proportioned as to permit vertical reciprocation of the sleeve, but limit such movement when the motion is at an angle to the vertical axis of the tube. There is a resilient gasket which encircles the sleeve for abutment with the receptacle in order to lift the sleeve from the valve, thus

establishing flow from the tank into the receptacle. The sleeve has an outwardly extending flange designed to collect and direct the condensate which may drain from the bulb-like element.

The Beyer patent relates to a bottle-filler, and was cited for its disclosure of an apparatus in which the lower end of the passage through the hollow valve stem is restricted by a valve.

The Luckie patent relates to a bottle-filler washer. There is disclosed in the patent a bottle-filling device in which the upper portion of the member which engages the bottles is made with an annular groove and a discharge spout for collecting and removing condensed moisture and leakage.

The Mandell patent relates to a discharge valve for bottle-filling machines. There is disclosed in the drawings a valve through which liquid in a reservoir is drawn into bottles. The valve comprises a fitting secured in the bottom of the tank with a valve guide and a discharge orifice from the tank. There is shown a hollow valve stem with a valve at its lower end. The valve stem passes through the discharge opening, and at its upper end a ring is positioned which limits downward movement through the guide. The valve at the bottom of the lower end of the valve stem is seated in the lower end of a sleeve, which is slidably mounted in the orifice. There is a tubular member of resilient material surrounding the sleeve and the lower part of the orifice, and it bears against a flange on the sleeve so that the sleeve is urged downwardly and holds the valve seat against the valve. Surrounding the valve seat is a resilient cushion designed to be pressed against the mouth of the bottle to be filled. The bottle is vented during the filling operation by means of a central passage in the valve stem.

The Stewart patent is for an apparatus designed for filling containers, such as milk bottles, and has particular reference to the valve arrangement in such apparatus. The drawing of the patent depicts a bottle-filling device generally similar to that of the Mandell structure.

The Howard patent is concerned with a container-filling machine and in general is similar to the device of the Luckie patent.

Claims 1, 2, 7, and 13 to 15, inclusive, were rejected as unpatentable over the patent to Mandell; and claims 12 and 16 to 18, inclusive, over the Mandell patent in view of the Stewart patent, or over the Stewart patent in view of the patent to Mandell. Claim 3 was rejected as unpatentable over the patent to Mandell in view of the Luckie patent; Claim 6, over the Mandell patent in view of the Beyer patent; claim 8, over the patent of Mandell or that of Stewart.

 Claim 1 is typical of the group of claims, 1, 2, 7, and 13 to 15, inclusive, all of which were, as hereinbefore noted, rejected as unpatentable over the structure of the Mandell reference. There is disclosed in that patent a device for filling containers from an apertured reservoir. The device comprises a valve plug, an open-ended flexible resilient body having a passage therethrough and communicating at its upper end with the aperture in the bottom of the reservoir. The resilient body engages a flange on the valve at its lower end, which flange is defined as a rigid valve sleeve and is intermediate the valve plug and the resilient body. Thus it will be seen that every element of the structure defined in claim 1 is met by the device of the Mandell patent. The statement at the end of claim 1—"said resilient body constituting the sole means for conducting fluid withdraw from an aperture in said reservoir to said valve sleeve"—is clearly a function limitation, and can not lend patentability to the claim. It has been held many times that apparatus claims must be distinguished from the prior art by a definite recital of structure. General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Application of Griswold, 152 F.2d 1014, 33 C.C.P.A., Patents, 799; In re Stattmann, 146 F.2d 290, 32 C.C.P.A., Patents, 813, and In re Carr, 120 F.2d 386, 28 C.C.P.A., Patents 1240.

Claims 2, 7, 13, 14, and 15, as well as claim 1, define no structure not shown in

the Mandell patent, and therefore were properly rejected.

The rejection of claim 3 on the Mandell patent in view of the Luckie reference, we think, was proper. That claim is quite similar to claim 2, but recites the additional limitation of a flange on the valve seat element for collecting and directing the flow of condensate. That limitation is definitely shown in drawings of the Luckie patent, and obviously no invention would be involved by providing such a flange on the valve seat element flange of the Mandell device.

Claim 6, except for the final statement therein—that the fluid passage through the valve member is of smaller diameter than the opening in the valve stem—is readable on the Mandell device. The reasoning of the examiner—that no invention would be involved in restricting the mouth of the opening in the valve head of the Mandell reference in the same manner as is shown in the restricted orifice of the Beyer device —seems clearly sound. Furthermore, in our opinion, as was pointed out by the examiner, the broad idea of restricting such passage in the Mandell device would not involve invention.

With respect to the rejection of claim 8 on either the Mandell or Stewart patents, it may be said that in the latter patent a bulb and compression means, such as is called for by that claim, with the lower portion of the bulb having rounded edges defining the apertured opening, is clearly disclosed in one of the figures of the patent. The upper end of the bulb seems to be rounded, but even if that were not so, we are of opinion that it would not involve invention to have it in rounded form, particularly in view of the rounding of the lower part of the bulb. Claim 8, with respect to containing the expression, "to permit a rolling contact," certainly does not define structure, and may not be considered with respect to the patentability of that claim.

Claim 9 was rejected as being drawn to a non-elected species, and appellant, as hereinbefore mentioned, elected the struc-ture of two of his figures as such species. The structure of those figures we have described herein, and it is clear to us that the claim, which defines condensate collecting and deflecting means formed integrally with said bulb, is not readable on the elected figures, and, in our opinion, such rejection was proper. Counsel for appellant in his brief appears to contend that the figures of the elected species show a collecting flange, such as that called for by the claim. He directs attention to a number on one of the figures, whereon such numeral does not appear, and the figure discloses no flange. It is stated in the brief of the solicitor that apparently counsel for appellant intended to refer to a different figure, which shows such a flange. Whether or not that statement is correct, we are in no position to determine. If, however, such was the import of appellant's contention, it does not appear to us that the flange of that figure can be deformed into condensate discharging position when the bulb is compressed, as required by the claim. Such flange deformation is described only in connection with the flange of a figure that does not describe the elected species.

While it is true that in the decision of the Board of Appeals claim 9 was included among others, as being rejected on the prior art, such statement by the board is clearly an inadvertence for the reason that the board specifially affirmed the rejection of that claim by the examiner as not reading on the elected species defined by the two figures hereinbefore referred to. Since no generic claims were allowed, the rejection of claim 9, therefore, was proper.

Claims 12 and 16 to 18, inclusive, are very similar to claim 1. They were rejected on the Mandell patent in view of the patent to Stewart, or the Stewart patent in view of that to Mandell. While it is true that an inclined flange depending from the tank or reservoir is not shown in the Mandell device, it would not involve invention, in view of the Stewart device, to so construct the orifice of the Mandell structure.

936

For the reasons herinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.