46 CCPA

**Application of James C. DANLY.**

**Patent Appeal No. 6411.**

United States Court of Customs
and Patent Appeals.

Feb. 11, 1959.

Henry L. Shenier, New York City
(Francis M. O'Connor, New York City,
of counsel), for appellant.

Clarence W. Moore, Washington, D. C.
(D. Kreider, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Acting Chief Judge,
and RICH, MARTIN and JOHNSON,
retired, Judges.

WORLEY, Acting Chief Judge.

This is an appeal from the Board of
Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 1 to 9, inclusive, the only claims of appellant's application, No. 224,228, for a patent on a
power press tie rod heating system.

Claims 1, 7, and 9 are representative
and read:

"1. A power press tie rod heating system, including in combination a press frame, a tie rod for
holding the press frame in assembled
position, one end of the tie rod being
formed with screw threads, a nut
positioned about the screw threads,
insulating means positioned between
the nut and the press frame insulating the tie rod and nut from the
frame, means secured to the other
end of the tie rod bearing against
the press frame, insulating means
positioned between said last named
means and the press frame, electrical connecting means secured to
the nut end of the tie rod, and electrical connecting means secured to
the other end of the tie rod, means

for insulating the tie rod from the press frame intermediate its ends, the construction being such that alternating electric current may be passed through the tie rod to heat the same.

"7. A power press tie rod heating system, including in combination a press frame, four tie rods for holding the press frame in assembled position, nuts secured to the upper ends of the tie rods, nuts secured to the lower ends of the tie rods, means for insulating the nuts from the press frame, means for insulating the tie rods from the press frame, a bus bar for connecting the upper ends of a pair of adjacent tie rods to each other, a second bus bar parallel to the first bus bar for connecting the other pair of upper ends of tie rods to each other, a third bus bar disposed substantially at right angles to the first two bus bars for connecting the lower ends of a pair of adjacent tie rods to each other, and means for connecting the lower ends of the other two tie rods to a source of alternating current potential.

"9. A method of heating tie rods of a power press including the steps of insulating the tie rods from the press frame, connecting the insulated tie rods in series and then passing a low voltage, high density alternating current through the series-connected tie rods to heat and expand the same."

The references relied on are:

Sherman, 1,251,430, December 25, 1917; Macdonald, 1,321,530, November 11, 1919; Rode et al., 1,960,166, May 22, 1934; Wackerle, 2,241,283, May 6, 1941; Renier, 2,448,277, August 31, 1948.

Appellant's application relates to the tie rods of power presses. Such rods conventionally pass through openings in the upper and lower heads of the press and are threaded to receive nuts which bear against the heads and may be tightened to place the rods in tension. Appellant's specification states that in some presses it is not possible to obtain the desired degree of tension by merely tightening the nuts and that "In the prior art this tension is uniformly obtained by heating the rods, permitting them to expand, and then tightening the nuts while the tie rods are in lengthened condition due to the expansion following the heating. Then, when the tie rods cool, they shrink to give the desired tension."

It appears to have been the practice prior to appellant's invention to heat the tie rods by the local application of heat by such means as acetylene torches or electrical resistance units embedded in the ends of the tie rods. Such methods, however, were objectionable in that they resulted in unequal heating which led to erratic and unsatisfactory results and also in that they required an excessive amount of time since it was necessary for the heat to be conducted from the points at which it was applied to the other portions of the rods.

Appellant's improvement over the prior art practice resides in heating the tie rods electrically by insulating them from the press frame, connecting them in series and passing an alternating electric current through them to heat them to the desired temperature. The rods are insulated from the frame by bushings surrounding their threaded ends and washers underlying the nuts, such bushings and washers being made of a resin or similar insulating material. Due to the fact that alternating current is used, the current penetration into the interior of the rods is limited and the additional factors of hysteresis and eddy currents contribute to the production of heat.

The Sherman patent was cited to show the heating of tie rods in a press enabling them to be shrunk into place when the press is assembled.

The Macdonald and Wackerle patents disclose heating an elongated metal article by passing an alternating electric current through it in a longitudinal direction. In the former patent, the article is a hollow tube and in the latter a wire.

The Rode et al. patent, the basic reference relied on by the examiner and the

board, shows a power press having tie rods passing through openings in their heads and having threaded end portions onto which are threaded nuts which bear washers which, in turn, bear on the heads and thus place the rods in tension. It is stated in the patent that the press may become locked at its bottom position and, in order to relieve such condition means are provided for heating and thus lengthening the tie rods. As illustrated, the heating is done by a steam jacket surrounding each rod, but the patentees explain that the heating may be done "either electrically or otherwise."

The patent to Renier shows a press having tie rods electrically insulated from the heads by means of collars which surround the threaded portions of the rods and which have flanges underlying the nuts, constituting, in effect, insulating washers.

All the appealed claims were rejected on Rode et al. on the ground that it would be obvious in view of Macdonald or Wackerle to heat the tie rods of Rode et al. by passing an alternating current through them. Renier was relied on as showing how the rods could be insulated from the frame of the press.

It is stated in appellant's application that the passage of alternating current through the tie rods provides a more rapid and uniform heating than is obtainable by such localized heating means as acetylene torches and electrical resistance elements embedded in the rods. That assertion does not appear to have been controverted by the Patent Office tribunals. The basis of the rejection is succinctly stated in the following portion of the board's decision:

> "Having the suggestion that tie rods of a press may be heated electrically, any well known electrical heating means or method which is adaptable for this purpose may be used without invention. It is not considered that electrical heating of an elongated string by Wackerle or elongated pipe by Macdonald is non-analogous to electrical heating of

elongated tie rods of the Rode et al. patent."

The board was of the opinion that, given the idea of heating the tie rods by passing electric current through them, the particular arrangement of conductors and insulating elements set forth in the appealed claims would be obvious. Appellant does not dispute that proposition, but urges that the broad idea of applying alternating current directly to the rods instead of heating them by electrical resistance units, as had formerly been the practice, involved an inventive concept.

We agree with the board that the prior art disclosure that the tie rods may be heated electrically amounts to a suggestion of using any known method of electrical heating which appeared to be adaptable to the situation. However, as indicated in appellant's application, tie rods are made of solid metal and may vary from about two to twelve inches in diameter. We are inclined to agree with appellant that there is nothing in the prior art of record which would suggest that it was practicable to heat an article of that character by passing an electric current through it. On the contrary, it would appear that, because of the large diameter and correspondingly low electrical resistance of the rods, as compared with the conductors usually employed in electrical resistance heating, a prohibitively large current would be necessary. Neither Wackerle nor Macdonald discloses the heating of an article comparable to a tie rod, the former showing a string for a musical instrument, and the latter a drawn tube of comparatively thin metal. Those articles would clearly have a much higher electrical resistance than the tie rods here, and could apparently be sufficiently heated by the passage of either alternating or direct current, since neither patent makes any point of the type of current used.

In our opinion it seems reasonable to assume that any one desiring to adopt Rode's suggestion of heating the rods electrically would naturally look first to

the methods formerly employed for heating such rods by electricity and would find, as above indicated, that resistance units embedded in the rods had been employed for that purpose. It would be natural to suppose, therefore, that it was such units which Rode had in mind when he referred to heating the rods "electrically or otherwise." We find nothing in Rode which suggests any particular method of electrical heating other than those previously used. His actual invention, as described and claimed, relates to heating by means of a fluid medium such as steam, and does not appear to invite any exploration of new methods of electrical heating.

Appellant is able to heat his tie rods by passing alternating current through them, by reason of a phenomenon known as "skin effect" which occurs when such current is passed through a conductor of large diameter. In such a case, due to the production of eddy currents in the interior of the conductor, the current is largely concentrated adjacent the periphery, so that the effective conducting area is greatly reduced and it is possible to obtain substantial heating with a much smaller amperage than would be necessary if direct current were used and the entire cross sectional area conducted current substantially uniformly.

■ It is true, as pointed out in the brief for the Commissioner, that "skin effect" was well known in the art long prior to the filing of appellant's application, but, so far as the art of record shows, no one prior to appellant had conceived the idea of utilizing that phenomenon to obtain the desired heating of a metal article of a cross-section too large to permit effective heating by direct current. Based on our evaluation of the art available at that time, there is substantial doubt in our mind that the application of that idea to the heating of the tie rods of a press by passing alternating current through them would have been obvious in view of anything shown by the patents relied on. In our opinion, therefore, claims 3 to 9, inclusive, which are drawn to an apparatus and method for heating tie rods in that manner should have been allowed.

■ It is noted that claims 3 through 7 do not positively recite a source of alternating current as an element of the claims, but employ such expressions as "means for connecting the ends of the series-connected tie rods to a source of alternating current potential." While it may be literally true that any piece of wire could be used to perform that function, we are of the opinion that the quoted expression, taken in context, limits the claims to a construction in which a connection with a source of alternating current is actually made, since any other interpretation would render the quoted expression virtually meaningless. Appellant has used such phrases as "for holding" and "for insulating" throughout the appealed claims with the obvious intention of limiting them to actual performance of the stated functions, as distinguished from mere possibility of such performance, and no objection to such use has been made by the Patent Office tribunals, nor has any rejection of the appealed claims been based on indefiniteness or inferential recitation. Under such circumstances, we think claims 3 through 7 should be construed as being limited to an apparatus in which alternating current is actually applied to the tie rods, and our allowance of those claims is based on that interpretation.

Claims 1 and 2 are not limited to the actual use of alternating current. Those claims call for a press structure in which the tie rods are insulated from the frame and in which the construction is "such that alternating current may be passed through the tie rod to heat the same." It is evident that the quoted expression does not constitute a structural limitation, since an alternating current *may* be passed through any tie rod which is insulated from the press frame. It is old, as shown by the Renier patent, to insulate the tie rods from the frame, and accordingly, the construction shown in that patent is such that an alternating current could be passed through the tie

rods by merely connecting them with a source of such current.

■■ In view of the references of record, appellant's invention does not reside in a press in which it is *possible* to pass alternating current through the tie rods to heat them, but in a method and apparatus in which that is actually done. Claims drawn to an apparatus must distinguish from the prior art in terms of structure rather than function. In re Stattmann, 146 F.2d 290, 32 CCPA 813; In re Field, 255 F.2d 409, 45 CCPA 940. It follows that claims 1 and 2 fail to define a patentable distinction over the patents on which they stand rejected, and were properly rejected for that reason.

The decision of the Board of Appeals is modified, being affirmed as to claims 1 and 2, and reversed as to claims 3 to 9, inclusive.

Modified.